IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| MONICA BELZ,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>RUTH WRIGHT, *et al.*,<br><br>　　　　Defendants. | Case No. 25-cv-00517-DKW-RT<br><br>**ORDER (1) DENYING PLAINTIFF'S MOTION TO REMAND, (2) GRANTING DEFENDANTS' MOTIONS TO DISMISS; AND (3) GRANTING CERTAIN DEFENDANTS' MOTION FOR JOINDER** |

On December 30, 2025, Defendants Anna Elento-Sneed, John Khil, ES&A Inc., and Carlsmith Ball LLP (the "Attorney Defendants") moved to dismiss Plaintiff Monica Belz's First Amended Complaint. Dkt. No. 6. On January 9, 2026, Defendants Kimberly Metcalfe, Roberta Charles, Byron Watanabe, Alexandria Jones, Ruth Wright, Cynthia Ayonon, Mark Kunimoto, and Danielle Mehew (the "KFCU Defendants") filed a separate motion to dismiss, in which the Attorney Defendants sought to join. Dkt. Nos. 9, 11.[1] Finally, on January 27, 2026, Belz moved to remand this action to state court. Dkt. No. 13. These motions have all been fully briefed.

---

[1]The Attorney Defendants' unopposed joinder request is granted and is not further discussed herein.

Having reviewed the pleadings, the parties' briefs, and the relevant legal authorities, the Court agrees that remand is unwarranted and that the Amended Complaint should be dismissed. Accordingly, the motion to remand is DENIED and the motions to dismiss and relevant joinder are GRANTED, albeit with leave to amend, as described below.

## FACTUAL & PROCEDURAL BACKGROUND

### I.    The Amended Complaint

The following facts are taken from the First Amended Complaint, filed in state court on December 2, 2025. Dkt. No. 6-3.

In January 2018, Belz was hired by Kauai Federal Credit Union ("KFCU") as its president and CEO. *Id.* ¶ 22. On May 1, 2020, Belz and KFCU entered into a Split Dollar Agreement ("SDA"), a retirement compensation benefit wherein KFCU would fund, among other things, premiums on a life insurance policy owned by Belz. *Id.* ¶ 27. The SDA provided that Belz could borrow against the policy "beginning on access dates in 2030 and 2040." *Id.* ¶ 27. If Belz's employment was terminated for disability, however, she could begin to borrow against the policy immediately. *Id.* ¶ 28. The SDA defines "disability" as, *inter alia*, "any medically determinable

physical or mental impairment" that leaves Belz "unable to engage in any substantial gainful activity." *Id*. ¶ 29; Dkt. No. 6-5 at 1.[2]

In November 2022, Belz and KFCU entered an Employment Agreement for Belz to continue serving as president and CEO from January 2023 to December 2028. Dkt. No. 6-3 ¶ 32. The Employment Agreement further provided that KFCU could terminate Belz's employment if she became "functionally disabled" such that she was "incapable of performing her essential job functions" or for "good cause." *Id*. ¶¶ 36–40. If Belz was terminated due to disability, she was entitled to receive a severance award in addition to the retirement benefits found in the SDA. *Id*. ¶ 39. Belz, in turn, could terminate the Employment Agreement for "good reason." *Id*. ¶ 41.

In June 2024, Belz "experienced a sudden and severe onset of debilitating fatigue, migraines, cognitive difficulties, and other symptoms that rendered her largely bedridden" and left her "unable to function normally." *Id*. ¶¶ 43–44. Unable to work, Belz informed KFCU of her condition and requested that her employment be terminated due to functional disability. *Id*. ¶ 51. KFCU ceased paying Belz's salary after she reported her disability. *Id*. ¶ 52.

---

[2]Defendants attached a copy of the SDA to their motion papers, *see* Dkt. No. 6-5, which the Court will rely upon in light of Belz having incorporated its language into her Amended Complaint. *U.S. v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003) (holding that, in deciding a motion to dismiss, a court may incorporate by reference materials outside the complaint when they are referred to by the plaintiff and "form[ ] the basis of the plaintiff's claim").

Defendants—various KFCU employees or legal counsel—initially stated that they would draft a release agreement to terminate her, based on her reports, *id*. ¶ 53. But Defendants then made repeated requests for additional medical information, and despite multiple responses from Belz's physicians affirming her condition, *id*. ¶¶ 56–60, Defendants have continuously refused to classify Belz as disabled and refused to pay Belz her salary or disperse her disability benefits. *Id*. ¶¶ 74, 114.

## II.     Procedural History

On November 13, 2025, Belz filed this action in state court. Dkt. No. 1-3. On December 2, 2025, Belz filed her First Amended Complaint. Dkt. No. 6-3. On December 5, 2025, Defendants removed the action to this Court. Dkt. No. 1. The First Amended Complaint asserts the following claims against Defendants: (1) intentional and negligent infliction of emotional distress; (2) invasion of privacy; (3) breach of fiduciary duty; (4) discrimination and harassment on the basis of Belz's disability in violation of Hawaiʻi Revised Statutes ("HRS") § 378-2; (5) tortious interference with contract; (6) negligence; and (7) civil conspiracy ("Counts I–VII"). Dkt. No. 6-3 ¶¶ 117–160.

### a. Motions to Dismiss

On December 30, 2025, the Attorney Defendants moved to dismiss, arguing that (1) Belz's state law claims were preempted by ERISA; and (2) her claims were

inadequately pled.[3]  Dkt. No. 6.  On January 9, 2026, the KFCU Defendants moved to dismiss on the same grounds, Dkt. No. 9, in which the Attorney Defendants sought to join, Dkt. No. 11.  Belz filed substantially similar responses to both dismissal motions, arguing that her claims were not subject to ERISA,[4] her claims would not be preempted even if the SDA were an ERISA plan, and she had sufficiently alleged her claims.  Dkt. Nos. 18 & 19.  Regarding preemption, Belz specifically stated that "[a]ll of Belz's claims (except fiduciary duty) can stand without the SDA," apparently conceding that Count III was preempted by ERISA.  Dkt. No. 19 at 9. The Attorney Defendants and KFCU Defendants each replied, repeating their arguments for dismissal.  Dkt. Nos. 20 & 22.

### b.  Motion to Remand

On January 27, 2026, Belz moved to remand, asserting that her Amended Complaint contains only state law claims.  Dkt. No. 13.  Belz argued that although the action could be removed if her claims were governed by ERISA, that is not the

---

[3]Because, as stated below, the Court grants dismissal on preemption grounds, this Order will not discuss the merits of Belz's claims or whether they were adequately pled.

[4]Belz's opposition states only that her claims are not subject to ERISA preemption "[f]or the reasons articulated in Belz's motion to remand."  *See, e.g.*, Dkt. No. 18 at 9.  The Attorney Defendants argue that the Court should disregard this "incorporation by reference" approach because it allows Belz to "improperly circumvent page limitations."  Dkt. No. 20 at 2–3.  For the sake of completeness, and because the Court will necessarily address the arguments in Belz's motion to remand regardless, the Court will consider Belz's incorporated arguments.  The Court further notes that Belz did not utilize all of the space to which she was entitled by rule in responding to the motions to dismiss and, thus, could have repeated some of the remand arguments in her opposition, had she chosen to do so.  *See* Dkt. Nos. 18-19.

case because the SDA is non-discretionary and lacks any "ongoing administrative scheme." Dkt. No. 13-1 at 6–11. The Attorney Defendants and KFCU Defendants responded, each arguing that the SDA involves an "ongoing administrative scheme" and thus ERISA applies. Dkt. Nos. 16 & 17. Belz replied, substantially repeating her arguments that the SDA was not an ERISA-governed plan. Dkt. No. 21.

## STANDARD OF REVIEW

### I.   Removal and Remand

Pursuant to 28 U.S.C. §§ 1441(a) and 1446(b), any civil action brought in a State court may be removed to federal court by a defendant provided that the federal court would have had original jurisdiction over the action, and the removal is timely. Pursuant to 28 U.S.C. §§ 1331 and 1332(a)(1), this Court has original jurisdiction of all civil actions involving, respectively, (i) federal law and (ii) an amount in controversy in excess of $75,000 and citizens of different States.

Pursuant to Section 1447(c) of Title 28, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The burden of establishing this Court's subject matter jurisdiction "rests upon the party asserting jurisdiction[,]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), which, here, means the Defendants, *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773 (9th Cir. 2017). "[A]ny doubt about the right of removal requires resolution in favor of

remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009).

## II.   Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2). *Id.* at 679.

When a complaint fails to state a plausible claim, leave to amend should be given when "justice so requires."  Fed.R.Civ.P. 15(a)(2).  Indeed, the Ninth Circuit has made clear that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and quotation marks omitted).  However, justice does not require leave to amend when (1) it would prejudice an opposing party, (2) it is sought in bad faith, (3) it would produce an undue delay in litigation, (4) it would be futile, or (5) there has been repeated failure to cure a deficiency.  *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

## DISCUSSION

### I.   Motion to Remand

Defendants here removed on the basis of federal question jurisdiction, relying on ERISA.  Typically, federal question jurisdiction "turns on the well-pleaded complaint rule," *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (internal quotation marks omitted), meaning that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint," *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  "In particular, the existence of a federal defense normally does not create statutory 'arising under'

jurisdiction, and a defendant may not generally remove a case to federal court unless the *plaintiff's* complaint establishes that the case arises under federal law." *Davila*, 542 U.S. at 207 (cleaned up) (emphasis in original).

ERISA, however, provides an exception to this rule. "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Id*. at 208. "To this end, ERISA includes expansive pre-emption provisions, . . . which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Id*. (internal quotation marks and citations omitted); *see also Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1439 (9th Cir. 1990) ("ERISA contains one of the broadest preemption clauses ever enacted by Congress."). "When a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be removed." *Davila*, 542 U.S. at 207 (cleaned up). "This is so because [w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Id*. at 207–08.

Within the Ninth Circuit, "a relatively simple test has emerged to determine whether a plan is covered by ERISA: does the benefit package implicate an ongoing administrative scheme?" *Delaye v. Agripac, Inc.*, 39 F.3d 235, 237 (9th Cir. 1994). To determine if an ongoing administrative scheme is present, courts examine whether the employer is required to use discretion and judgment in administering

the plan—if so, an ongoing administrative scheme is implicated. *See Bogue v. Ampex Corp.*, 976 F.2d 1319, 1323 (9th Cir. 1992) (finding an ongoing administrative scheme where "the program's administration required a case-by-case, discretionary application of its terms"); *Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1317 (9th Cir. 1997) (no ongoing administrative scheme where "[t]he level of discretion, if any, which [the employer] was required to exercise in implementing the agreement was slight"); *Edwards v. Lockheed Martin Corp.*, 954 F. Supp. 2d 1141, 1148 (E.D. Wash. 2013), *aff'd*, 617 F. App'x 648 (9th Cir. 2015) ("In the Ninth Circuit, an 'ongoing administrative scheme' is implicated where the employer is required to exercise a significant degree of discretion in determining eligibility for the plan and/or in awarding benefits to participants.").

The parties here agree that the Court must determine if preemption applies—and thus whether remand is appropriate—based on whether the SDA involves an ongoing administrative scheme. *See* Dkt. Nos. 13-1, 16, 17. Belz argues that the SDA does not do so because there "is nothing discretionary about the determination of disability, or the timing, amount or form of the payment" to which Belz is entitled. Dkt. No. 13-1 at 9. According to Belz, the duties the SDA imposes on KFCU are "predetermined, purely mechanical in execution, based on objective third-party determinations" rather than any discretionary decision, and "triggered at a single, clearly defined event—separation from employment." *Id*. at 9–10.

- 10 -

Belz, in other words, attempts to frame the SDA as a straightforward, mechanically-applied contract that simply dispenses money upon the end of her employment. The reality is far different. Analyzing the actual provisions of the SDA shows that a significant part of the agreement demands discretionary decision-making on the part of KFCU, including provisions which are central to Belz's claims. Most obvious of these are the sections dealing with the definition and determination of disability. The SDA states that "disability" is "any medically determinable physical or mental impairment" that results in Belz being "unable to engage in any substantial gainful activity." Dkt. No. 6-5 at 1. These terms—"determinable" and "substantial"—necessarily demand at least some degree of judgment from KFCU. This is far from the only example. The SDA provides that a "good reason" to terminate employment arises where Belz experiences a "material diminution" in her compensation or duties, or a "material change" in the location where she works. *Id*. It further states that the SDA's annual borrowing cap is calculated based on, in relevant part, any "necessary assumptions [KFCU] deems reasonable." *Id*. at 4. Determinations of reasonableness and materiality are inherently discretionary calls. *See Sutton v. Brandywine Realty Tr.*, 2007 WL 2288118, at *3 (N.D. Cal. Aug. 7, 2007) ("[I]t is also impossible to determine whether there has been a 'material adverse alteration' or an assignment of new duties

that are 'materially inconsistent' with former duties without an ongoing administrative scheme.").

These few examples are not exhaustive—the SDA is replete with others. But they alone are enough to show that the SDA's implementation depends upon KFCU's judgment. In light of this, the SDA constitutes an ongoing administrative scheme and is therefore subject to ERISA.

Accordingly, this Court has original jurisdiction over this case because it arises "under the Constitution, laws, or treaties of the United States," *see* 28 U.S.C. § 1331, and Defendant has met its burden of demonstrating removal was proper, *see* 28 U.S.C. § 1441(a). Belz's motion to remand is denied.

## II.    Motions to Dismiss

Having determined that the SDA implicates ERISA, the question remains as to which, if any, of Belz's state-law claims are preempted by that statute. Defendants assert that all such claims are preempted and move to dismiss them. Dkt. Nos. 6-1 at 8–12, 8-1 at 6–9.

As noted, the Court must determine if ERISA "wholly displaces the state-law cause of action through complete pre-emption." *Davila*, 542 U.S. at 208. According to the Ninth Circuit, ERISA preempts state laws that "relate to" an ERISA plan, *Cleghorn v. Blue Shield of California*, 408 F.3d 1222, 1225 (9th Cir. 2005), meaning that a "state law claim is preempted by ERISA if it has a connection with or a

reference to an ERISA-governed benefit plan." *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010) (internal quotation marks omitted). "Stated another way, where the existence of an ERISA plan is a critical factor in establishing liability under a state cause of action, the state law claim is preempted." *Id.* (internal quotation marks and alterations omitted). "[A] complaint containing only state-law claims that are preempted by ERISA must be dismissed." *Cruzeta v. Sony Elecs., Inc.*, 2013 WL 1788552, at *4 (S.D. Cal. Apr. 25, 2013).

Belz argues that, with the exception of her Count III fiduciary duty claim, her state-law claims are not preempted by ERISA. Dkt. No. 19 at 9–12. The Court disagrees. To begin, each of Belz's claims—without exception—refers explicitly to the SDA and alleges that the denial of benefits under the SDA gave rise to the corresponding cause of action. Count V, for example, states that Defendants "tortiously interfered with Belz's rights" under the SDA by denying Belz "access [to] benefits." Dkt. No. 6-3 ¶¶ 144–150. Belz's negligence claim (Count VI) alleges that Defendants' duty to Belz arose from her status as "a beneficiary of agreements" with KFCU, *id.* ¶ 152, and her discrimination claim (Count IV) states that Defendants improperly "refus[ed] to afford Belz the benefit of any of her disability-related benefits" on discriminatory grounds, *id.* ¶ 141. The same is true of Belz's remaining claims: all either expressly refer to SDA (directly quoting from it in some cases) or describe how Belz has been unable to access benefits under the SDA to

which she claims entitlement because of Defendants' conduct.  Given these allegations, it is plain that the existence of an ERISA plan is a "critical factor" in each of Belz's claims.  *Wise*, 600 F.3d at 1190; *see also* Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 57 (1987) (finding ERISA preempts all common law causes of action arising from improper handling of claim for benefits under an ERISA plan); *Bommarito v. Nw. Mut. Life Ins. Co.*, 2018 WL 3537118, at *5 (E.D. Cal. July 23, 2018) ("The Ninth Circuit has continually held that state law claims arising out of a denial of ERISA plan benefits are preempted by ERISA.").

Belz arguments against preemption are not persuasive.  First, relying on *Groves v. Kaiser Foundation Health Plan Inc.*, 32 F. Supp. 3d 1074 (N.D. Cal. 2014), Belz argues that her claims are not preempted because they "do not seek plan benefits" as damages.  Dkt. No. 18 at 11–12.  Although the First Amended Complaint does not clearly specify the damages it seeks, *see* Dkt. No. 6-3 at 37, Belz's reliance on *Groves* is misplaced.  In that case, the court *granted* dismissal of state-law claims because they were preempted by ERISA, despite the plaintiff not seeking plan benefits as damages—the court merely refrained from doing so with prejudice.  *Groves*, 32 F. Supp. 3d at 1088.

Second, Belz argues that at least her disability discrimination claims are not preempted because they rely on independent bases separate from the ERISA relationship.  Dkt. No. 18 at 11.  It is true that "[a]n otherwise ERISA-preempted

- 14 -

claim may survive to the extent that it relies on a theory independent of the benefit plan." *Kibble v. Quigley*, 1993 WL 81362, at *4 (N.D. Cal. Mar. 16, 1993) (citing *Sorsosky v. Burroughs,* 826 F.2d 794, 800 (9th Cir. 1987)).  Still, "[a] garden variety state law cause of action, not particularly troublesome in circumstances not involving employee benefits, may be preempted where it is used to remedy exactly the type of illegal activity proscribed by ERISA." *Tingey v. Pixley-Richards*, 953 F.2d 1124, 1130 (9th Cir. 1992).

Belz also cites to two independent bases for her claims.  First, she argues that all of her claims rely not only on the SDA, but also on her Employment Agreement, "which no one claims is an ERISA plan." Dkt. No. 18 at 11.  Thus, "all of her claims would still stand if [the Employment Agreement] were the only agreement providing her disability related benefits." *Id*.  Even if the Court assumed that the Employment Agreement was not an ERISA plan, however, that alone would not save Belz's claims from preemption.  In cases involving both ERISA and non-ERISA contracts, the Ninth Circuit has found that where "at least some of the contracts at issue . . . are ERISA plans," a plaintiff's claims may still be completely preempted by ERISA. *Fossen v. Blue Cross & Blue Shield of Montana, Inc.*, 660 F.3d 1102, 1110 (9th Cir. 2011).  The relevant question is not whether multiple contracts exist, but whether the plaintiff's claims are based on enforcing rights provided by ERISA—that is so with Belz's claims here.  *See id*. ("The individual [plaintiffs] are the participants in

- 15 -

the ERISA plan, and they are suing [defendant] . . . to enforce rights that are provided by ERISA.    That is enough to bring a suit within the scope of ERISA [preemption].”); *see also Cruzeta*, 2013 WL 1788552, at *4 (holding that plaintiff's “claims do not rely on an independent theory because [p]laintiff's sole assertion is that he was . . . deprived of early retirement benefits”).

Second, Belz asserts that her disability discrimination claims cannot be preempted because they “would also allege federal law violations.”  Dkt. No. 18 at 13.  That is certainly not the case now – no such federal discrimination claim appears in the operative complaint, and Belz's opposition brief is not the means by which to amend her claims.

Accordingly, the Court finds that Belz's claims, as currently asserted, are preempted by ERISA and, therefore, the First Amended Complaint must be dismissed. *Cruzeta*, 2013 WL 1788552, at *4.  Because it is possible that Belz could assert non-preempted claims if permitted an opportunity, the Court grants leave to amend.  *Lopez*, 203 F.3d at 1130.

## **CONCLUSION**

For the reasons set forth herein, Defendants' Motions to Dismiss, Dkt. Nos. 6 & 9, are GRANTED, and the First Amended Complaint is DISMISSED WITH LEAVE TO AMEND.  The Motion to Remand, Dkt. No. 13, is DENIED.  Should Belz wish to amend her pleadings, she must file a standalone Second Amended

Complaint no later than April 28, 2026.  If no amended pleading is filed by that date, this action will be dismissed and closed without further notice.

IT IS SO ORDERED.

DATED: April 7, 2026 at Honolulu, Hawai'i.



Derrick K. Watson
United States Chief District Judge

---

*Monica Belz v. Ruth Wright, et al*; Civil No. 25-00517 DKW-RT; **ORDER (1) DENYING PLAINTIFF'S MOTION TO REMAND, (2) GRANTING DEFENDANTS' MOTIONS TO DISMISS; AND (3) GRANTING CERTAIN DEFENDANTS' MOTION FOR JOINDER**